## Von Dohren v. Berks County
## Board of Assessment Appeals

*Larry W. Miller Jr.,* for appellants.
*Edwin L. Stock,* for appellee.

LASH, *J.,* October 2, 2009—The appellants, Craig P. Von Dohren and Barry L. Von Dohren (landowners), have appealed the decision of the Berks County Board of Assessment Appeals (board) directing a rollback from the preferential use assessment to full market value assessment of real estate owned by landowners, pursuant to the Pennsylvania Farm Land and Forest Land Assessment Act of 1974 (Act 319), commonly known as the Clean and Green Act, 72 P.S. §5490.1 et seq. The board found that more than two acres of property owned by landowners was being used commercially as a self-storage business. As such, the business was a "non-conforming rural enterprise" which constituted a breach by landowners of the covenant under the Clean and Green Act. Accordingly, the board assessed rollback taxes totaling $29,886.71. Landowners argue that the acreage involved in the business does not exceed two acres. A non-jury trial was held on September 28, 2009.

This court enters the following findings of fact:

## I. FINDINGS OF FACT

(1) The appellants, Craig P. Von Dohren and Barry L. Von Dohren (landowners), are the owners of property located at 443 Oley Furnace Road, Oley Township, Oley Valley School District, Berks County, Pennsylvania 19547, consisting of approximately 32.40 acres of land, improved with a dwelling, and 15 buildings (property), eight of which are utilized in a self-storage business.

(2) The appellee, Berks County Board of Assessment Appeals (board), is an agency of the County of Berks

with a principal place of business in the Berks County Services Center, Third Floor, 633 Court Street, Reading, Berks County, Pennsylvania 19601.

(3) The property has been enrolled in the Clean and Green program since 1994, when the property was still owned by William and Peggy Ann Reifsnyder.

(4) By deed dated November 12, 1998, the property was transferred from Peggy A. Reifsnyder to Peter E. Von Dohren, Betty Jane Von Dohren, husband and wife, and Barry L. Von Dohren and Craig P. Von Dohren.

(5) In January 1999, a Clean and Green application was made by all four Von Dohrens for the property. On this application, the Von Dohrens did not indicate the presence of a storage unit business. Instead, the application indicated that the property consisted of a one-acre homesite, 29 acres tillable, and two acres forest.

(6) In August 2005, Barry Von Dohren completed a Clean and Green questionnaire. On this questionnaire, in answer to a question regarding whether or not there is a business on the property, Barry Van Dohren indicated that there was a business and that one-half acre is used for the business. The type of business was listed as "garage rentals."

(7) As a result of this answer on the questionnaire, the assessment office performed a site inspection at the property. At this point, the assessment office determined that two acres would be rolled out of the Clean and Green program because a self-storage business was being conducted on approximately two acres. Rollback taxes were assessed and paid on the two acres.

(8) By deed dated May 21, 2008, the property was transferred from Peter E. Von Dohren, Betty Jane Von Dohren, husband and wife, and Barry L. Von Dohren and Craig P. Von Dohren to landowners.

(9) On or about September 12, 2008, landowners filed an application to the Zoning Hearing Board of Oley Township, then later filed an amended application.

(10) This application arose after the zoning officer of Oley Township initiated proceedings and made a determination that the self storage use was not a permitted use under the applicable zoning ordinance.

(11) The application was an appeal of the enforcement notice issued by the township zoning officer, and in the alternative, a request for a variance from the applicable provision of the zoning ordinance.

(12) On January 12, 2009, the Oley Township Zoning Hearing Board filed and entered a decision on the application, finding the self-storage business to be a permitted use under the zoning ordinance, and dismissing the request for a variance as moot.

(13) After learning of the zoning proceedings, the assessment office performed a site check on February 5, 2009 and determined that more than two acres was being used for the landowners' self-storage business.

(14) As a result of this site inspection, on February 12, 2009, the Berks County Assessment Office issued a Clean and Green breach notice to landowners. The letter stated that "due to a non-conforming rural enterprise, the agreement covering this tract has been breached." Rollback

taxes totaling $29,886.71 were assessed against landowners.

(15) On March 4, 2009, landowners filed an appeal to the board.

(16) Following a hearing on March 30, 2009, the board sent landowners a letter dated April 2, 2009, notifying them that the breach was upheld.

(17) On May 1, 2009, landowners filed a notice of appeal with the Berks County Court of Common Pleas.

## II. DISCUSSION

Under section 5490.8(d)(1) (section 8), a landowner is permitted to apply a maximum of two acres of land toward a rural enterprise incidental to the operational unit without breaching the Clean and Green Act. That section provides:

"(d)(1) A landowner may apply a maximum of two acres of a tract of land subject to preferential assessment toward direct commercial sales of agriculturally related products and activities or for a rural enterprise incidental to the operational unit without subjecting the entire tract to rollback taxes, provided that:

"(i) The commercial activity is owned and operated by the landowner or his beneficiaries who are designated as class A for inheritance tax purposes.

"(ii) An assessment of the inventory of the goods involved verifies that it is owned by the landowner or his beneficiaries.

"(iii) The rural enterprise does not permanently render the land incapable of producing an agricultural commodity."

In support of their position that the storage business area is less than two acres, landowners presented the testimony of Barry L. Von Dohren and a surveyor, Larry W. Miller Sr. Mr. Von Dohren testified that landowners utilize eight buildings in the self-storage business, and have done so for several years. He expressly stated that there have been no changes from 2005, when the assessment office conducted its first inspection, until 2009, when the assessment office performed its site check, prompted by the zoning proceedings.[1] Landowners believe that the 2005 and 2009 determinations of the assessment office should have been the same and that the 2009 determination is in error.

In addition to the buildings, Mr. Von Dohren identified driving and parking areas surrounding the buildings, labeled as "access areas." These areas service the storage units and are considered to be part of the business.

Mr. Von Dohren also identified several other areas of the property in the immediate vicinity of the self-storage business. These include several buildings being used for horse boarding, a grassy area being used for the storage of horse trailers, a barn bridge, an area where walnut trees are present which are harvested, and a grazing area

---

1. The zoning proceedings did not involve any expansion, rather, as stated, it was a response to the zoning officer's determination that the existing storage business constituted an impermissible use under the zoning ordinance.

for the horses. Landowners argue that these areas should not be included as acreage of the self-storage business.

Landowners' surveyor conducted an inspection of the property and measured the pertinent acreage using the walking wheel technique. He found the eight buildings to total 40,874 square feet or 0.94 acres. He found the access areas to total 39,939 square feet or 0.92 acres. He concluded that the total acreage being utilized by the self-storage business is 1.86 acres.[2]

The board presented the chief assessor of the Berks County Assessment office, Brenda Shaw, and its director of tax mapping, William Cochan. Ms. Shaw testified that the assessment office's commercial assessor had conducted two site inspections of the property in 2005 and 2009. According to the commercial assessor, more buildings were being utilized for the self-storage business in 2009 than in 2005. Accordingly, the assessment office had to revise the initial position it reached in 2005 that the business was limited to two acres.

To obtain a measurement of the business, the assessment office relied on an aerial photograph of the property and a computer software program. The computer, analyzing the photograph, was able to reach calculations for the size of the buildings, the access area, and some of the other areas near the buildings, which the board categorizes as "supporting areas," and believes should

---

2. His original determination was 1.89 acres, which included an additional 1,575 square feet. However, he later subtracted this, finding that 900 square feet was being used as a supporting area for the horse boarding and a separate section of 675 square feet was a grassy area, not part of the self-storage business.

be included as acreage of the business. According to the computer, the eight buildings and the access areas totalled 2.20 acres. Adding the supporting acres, the total measurement is 2.75 acres.

There are several issues in dispute. The first question concerns which method of measurement is more reliable, the walking wheel approach conducted by a licensed surveyor, or the mathematical calculations conducted by a computer of a digitalized aerial photograph of the area. Ms. Shaw admitted that a certified survey is preferable to the computer program. However, here, there is no certified survey, only the informal calculations and testimony of the surveyor. The second issue relates to whether additional buildings are now being used for self-storage, as believed by the commercial assessor, an issue of credibility. Third, is the accuracy of the measurements. Landowners' surveyor believes that the computer conclusions are faulty, as the aerial photograph is a photograph of the top of the buildings, which measures the roofs. As several of the roofs overhang as much as three feet from the walls of the buildings, the buildings' measurements were inflated. The final issue is whether the acreage designated "supporting acres" should be included in the calculation of the size of the business.

Upon review, we sustain landowners' appeal. Based on the evidence presented, landowners have met their burden in establishing that the self-storage business is conducted on less than two acres of the property.

Initially, we are satisfied that there has been no expansion of the business from the time the assessment office

conducted its first site inspection in 2005. Mr. Von Dohren testified credibly, and we accept his testimony as true. It appears that the challenge from the assessment office stems in part from the assessment office's mistaken belief that there was an expansion of the facility, a belief apparently initiated from comments of the commercial assessment or from the existence of zoning proceedings, which did not involve an expansion at all but rather was a challenge to the existing business.

We also accept the surveyor's opinion as more reliable than the computer program. As stated, the chief assessor admits a preference for a certified survey, implying that she believes it to be superior to the program. While landowners did not produce a certified survey, they did produce testimony from the surveyor. Testimony of a licensed surveyor, taken under oath and subject to cross examination, possesses a higher degree of indubitability than either a certified survey or a computerized projection from an aerial photograph. Here, we find the surveyor to be credible, and we accept his figures.

We also find the "supporting acres" should not be included in the calculation of this self-storage business acreage. The board's argument is based on a decision by this court in *Moore v. Berks County Board of Assessment Appeals,* 72 D.&C.4th 47 (2005), *affirmed in part, reversed in part on other grounds,* 888 A.2d 40 (Pa. Commw. 2005). In *Moore,* the buildings used for commercial purposes and a driveway network accessing the buildings totaled 1.924 acres. However, among the driveway network were several grassy areas which, if in-

cluded in the total acreage, increases that acreage to 4.28 acres. The Moores argued, among other things, that the grassy areas could be used for pasture lands and should not be considered part of the commercial operation. However, this court ruled otherwise, finding that there was no agricultural use being conducted on the grassy areas and that the grassy areas appeared to support the commercial use.

The *Moore* case is distinguishable on the facts. The board's evidence identified five areas immediately adjacent to several of the buildings which were considered "supporting areas." However, landowners' evidence established that four of these areas are currently used for agriculture. One area stores the horse trailers for the horse boarding operation. A second area was used for grazing. Within the third area were the walnut trees, which continue to be harvested. The fourth area consisted of a barn bridge which accessed the second story of one of the storage buildings, an area not used for the self-storage business but used by landowners for storage of their personal farm equipment. Accordingly, these four areas are not part of the self-storage business. Finally, the fifth area, which is immediately adjacent to building "A", as designated on the parties' exhibits, is a grassy area not being subjected to any use. Landowners' surveyor testified that he included this area in his calculation of the self-storage business area, being part of the 1.86 acres.[3]

---

3. In his testimony, the surveyor admitted that he did this accidently and only discovered this when he rechecked his figures immediately prior to the hearing.

Based on these rulings, this court finds that the self-storage business utilizes 1.86 acres of the property, and that landowners' business is permitted by section 8 of the Clean and Green Act. Accordingly, landowners did not breach the Clean and Green Act.

We enter the following order:

## ORDER

And now, October 2, 2009, upon consideration of the appeal of Craig P. Von Dohren and Barry L. Von Dohren from the decision of the Berks County Board of Assessment Appeals entered April 2, 2009, and after trial held, the decision of the board is reversed. Appellants' property shall continue to be enrolled in the Clean and Green program and no rollback taxes shall be directed.